IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 7:04-CR-128-1 |
| | ) | |
| v. | ) | |
| | ) | |
| WENDELL ANTONIO JOHNSON, | ) | By: Hon. Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Wendell Antonio Johnson, initially proceeding pro se but later represented by counsel, has filed three motions to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF Nos. 256, 261, 270. He asks the court to reduce his current sentence of 300 months to time served. The government initially moved to dismiss Johnson's petition, arguing that he was not entitled to a reduction in his sentence under the First Step Act, but filed an additional response conceding that Johnson is eligible for relief in light of United States v. Gravatt, 953 F.3d 258 (4th Cir. 2020). ECF Nos. 267, 271. The government argues that Johnson's original sentencing guidelines range of 262-327 months still applies but the government is not opposed to a sentence at the low end of that guidelines range. For the reasons set forth below, the court will **GRANT** Johnson's request and reduce his sentence to 215 months, but not less than time served.

## BACKGROUND[1]

On February 3, 2005, a superseding indictment was filed against Johnson charging him with nine counts of drug trafficking. ECF No. 58. In Count Eight, Johnson was charged with

---

[1] The record in this case contains several errors and inconsistencies, some of which are material and some of which are not. The court will note them as part of the background and discussion of Johnson's case.

attempting and aiding and abetting in the attempt to possess with intent to distribute more than 5 kilograms of a mixture or substance containing cocaine. Id. at 4.

On April 22, 2005, Johnson entered into a plea agreement where he pled guilty to three of the counts: conspiracy to distribute 50 grams or more of cocaine base and more than 5 kilograms of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One); possession with intent to distribute a measurable quantity of powder cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Seven); and aiding and abetting possession with intent to distribute more than 500 grams of powder cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count Eight). ECF No. 111 ¶¶ 2, 3.

The government agreed to dismiss the remaining counts against him. Id. ¶ 3. The parties stipulated that for purposes of U.S.S.G. §§ 2D1.1 and 1B1.3, Johnson would be held responsible for more than 5 kilograms but less than 15 kilograms of powder cocaine. Id. ¶ 4. Johnson acknowledged that he was subject to increased penalties because of his prior felony drug-trafficking conviction and waived any objection to the enhancement. Id. ¶ 8. Johnson pled guilty the same day. ECF Nos. 110, 112. At the plea hearing, Johnson pled guilty to conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine (Count One), possession with intent to distribute a measurable quantity of cocaine (Count Seven) and possession with intent to distribute 5 kilograms of cocaine (Count Eight). Plea Hrg. Tr., ECF No. 178 at 9-10. He did not enter a plea as to the cocaine base. Id. at 2-3, 9, 11-12. Although Johnson stated in the colloquy that Count Eight involved 5 kilograms of cocaine,

the amended judgment states that he was found guilty on 500 grams or more of cocaine. ECF No. 175 at 1.

According to the plea agreement, Johnson faced a statutory minimum sentence of twenty years and a mandatory sentence of life on Count One; a maximum of 30 years on Count Seven; and a range of 20 years to life on Count Eight. See Plea Agrmt., ECF No. 111 at ¶ 2. See also 21 U.S.C. § 841(b)(1)(A) and (C) (2004). These sentences appear to have contemplated that the government was going to file an information pursuant to 21 U.S.C. § 851, which it filed on June 6, 2005. ECF No. 128. However, the enhancements do not appear to have been considered in the Presentence Investigation Report ("PSR"). See ECF No. 257 at 1, 26 ¶ 97. In fact, the PSR states that the § 851 enhancement was not timely filed as required by statute. Id. at 26 ¶ 99. Also, while at the plea hearing the parties discussed the § 851 enhancement, Plea Hr'g Tr., ECF No. 178 at 4, and the court recited the statutory sentences as if it were considering the enhancement, id. at 11-12, at the sentencing hearing the court stated that Johnson was not being sentenced under § 851 but was being sentenced as a career offender under the guidelines. Sent. Hr'g Tr., ECF No. 196 at 46.

The inconsistencies in the indictment, the plea agreement, the plea colloquy, and the judgment are significant in respect to Count Eight because, according to the indictment, Johnson was charged with aiding and abetting in the attempt to possess and distribute more than 5 kilograms of cocaine. ECF No. 58 at 4. For purposes of penalties, that amount of cocaine falls under 21 U.S.C. § 841(b)(1)(A) (2004) and carries a penalty of 10 years to life. However, the indictment stated that the conduct fell under § 841(b)(1)(B), which carries a

3

penalty of 5 to 40 years. Notwithstanding the language in the indictment and the plea colloquy, Johnson was convicted of possession with intent to distribute 500 grams or more of cocaine in Count Eight. ECF Nos. 154 at 1; 175 at 1. Therefore, the court finds that the statutory penalty applicable to Count Eight is 5 to 40 years as set forth in § 841(b)(1)(B).

According to the PSR, Johnson was responsible for 14.99 grams of powder cocaine, ECF No. 257 at ¶ 31, but the parties do not dispute that he agreed to be held responsible for between 5 and 15 kilograms of powder cocaine. Under the sentencing guidelines, that drug quantity resulted in a base offense level of 32. Id. In addition, he was found to be a career offender under U.S.S.G. § 4B1.1. Id. at ¶ 40. The court determined Johnson to have a total offense level of 34 and a criminal history category of VI, which resulted in a guidelines range of 262-327 months. Statement of Reasons, ECF No. 260 at 3.

At the sentencing hearing, the government recommended a sentence of 262 months. ECF No. 196 at 44. However, the court disregarded that recommendation and sentenced Johnson to 300 months each on Counts One and Eight and a term of 240 months on Count Seven, all to run concurrently, and to 5-year terms of supervised release on each count, also to run concurrently.[2] Jmt., ECF No. 154. An amended judgment was entered on February 2, 2007, to reflect that in Count Two, Johnson was convicted of distribution of powder cocaine, rather than distribution of cocaine base. Amd. Jmt., ECF No. 175. Johnson has been in

---

[2] The PSR and judgment misstate the statutory period of supervised release. Johnson's conviction on Count One with a prior felony drug conviction carried a mandatory 10-year period of supervised release. 21 U.S.C. § 841(b)(1)(A) (2004).

custody since September 2004 and the Bureau of Prisons calculates his release date as July 1, 2026.

Johnson seeks relief under the First Step Act. He argues that he is eligible for relief and that this court has discretion to reduce his sentence to time served. The government concedes that Johnson is eligible for consideration of a sentence modification but argues that his sentence should not be reduced below the original guidelines sentence of 262-327 months.

## ANALYSIS

### I. The First Step Act

The First Step Act is a remedial statute "intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176-177 (4th Cir. 2019). Prior to passage of the Fair Sentencing Act, a drug trafficker dealing in crack cocaine was subject to the same sentence as a trafficker dealing 100 times more powder cocaine. Kimbrough v. United States, 552 U.S. 85, 91 (2007). The sentencing scheme had a racially disparate impact that resulted in excessive and unwarranted punishments that disproportionately fell on defendants of color. Wirsing, 943 F.3d at 177-178 (internal citations omitted). The Fair Sentencing Act reduced the crack-to-powder ratio to 18-to-1 and eliminated the mandatory minimum sentence for simple possession of crack. Id. at 178.

The Fair Sentencing Act did not apply retroactively to defendants who were sentenced before its passage on August 3, 2010, unless they could bring a motion under the narrow exception provided in 18 U.S.C. § 3582(c)(2). Id. at 178-179 (citing United States v. Black, 737

5

F.3d 280, 282, 286-287 (4th Cir. 2013)). After passage of the Fair Sentencing Act, the United States Sentencing Commission amended the guidelines to lower the base offense levels assigned to different amounts of cocaine base (Amendments 750 and 782) and provided that the amendments applied retroactively. Id. at 179 (citations omitted). The amendments allowed some defendants sentenced before August 3, 2010 to seek relief, not directly under the Fair Sentencing Act, but by means of a § 3582(c)(2) motion related to one of the amendments. Nevertheless, a reduction under § 3582(c)(2) only applied if the guidelines had the effect of lowering the defendant's applicable guideline range. Id. The amendments did not operate to lower the sentences for defendants convicted of very large quantities of crack, or those whose sentences were driven not by the quantity of drugs involved, but by their status as a career offender. Id.

The First Step Act allows defendants sentenced prior to August 3, 2010, and who were ineligible for relief under the guideline amendments, to seek a reduction in their sentences as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. First Step Act § 404(b), 132 Stat. at 5222. A "covered offense" is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." Id. at § 404(a), 132 Stat. at 5222. Courts have discretion to lower or not lower a sentence even when a defendant is eligible for a sentence reduction. Id. at 404(c), 132 Stat. at 5222.

At the time Johnson was sentenced, a violation of § 841(a)(1) carried a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment if the offense

6

involved more than 50 grams of cocaine base, and a penalty range of 5 to 40 years if the offense involved more than 5 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A) and (B) (2006). Following passage of the First Step Act, in order to trigger the 10-years-to-life-sentencing range, the offense must involve more than 280 grams of cocaine base, and to trigger the 5-to-40-year sentencing range, the offense must involve more than 28 grams of cocaine base.

The government initially argued that because Johnson was indicted and pled guilty to an offense involving more than 5 kilograms of powder cocaine, in addition to the cocaine base, he was not eligible for a reduction under the First Step Act as to Count One, because the powder cocaine provided an independent ground for sentencing under 21 U.S.C. § 841(b)(1)(A), and the maximum penalty was still life imprisonment. However, in light of the Fourth Circuit decision in Gravatt, the government now concedes that Johnson is eligible for relief under the First Step Act.

## II. Gravatt and Mixed-Object Counts

In Count One, Johnson was convicted of conspiracy to distribute 50 grams or more of cocaine base, and more than 5 kilograms of powder cocaine, in violation of 21 U.S.C. § 846. His conviction for distribution of cocaine base is a covered offense under the First Step Act, while his conviction for distribution of powder cocaine is not. In Gravatt, the Fourth Circuit held that when a defendant is charged conjunctively with conspiring to distribute both powder cocaine and crack cocaine, he is convicted of a "covered offense."

Gravatt pled guilty to conspiracy to distribute 50 grams or more of cocaine base, but also admitted guilt to conspiracy to distribute 5 kilograms or more of cocaine, making his

7

statutory penalty range 10 years to life, independent of the penalty on the cocaine base offense. Gravatt, 953 F.3d at 261. He filed a motion to reduce his sentence under the First Step Act, but the district court denied relief because the crack cocaine aspect of the dual-object conspiracy ultimately had no effect on his statutory penalty range as he faced the same penalty range on the powder cocaine as he did on the cocaine base. Id.

The Fourth Circuit reversed and remanded, finding that Gravatt was convicted of a "covered offense" under Section 404(a) of the First Step Act, even though the conviction was part of a multi-object conspiracy, with the penalties of one object (possession of crack cocaine) modified by the Fair Sentencing Act, while the penalties of the other (powder cocaine), were not. Id. at 264. The court clarified that it was not expressing an opinion on how the district court should rule on remand and was not suggesting how the factors considered by the district court in its eligibility analysis should be considered on remand. The court's holding was limited to its finding that Gravatt's motion should have been reviewed on the merits, rather than denied because he was not convicted of a "covered offense" under Section 404(a) of the First Step Act. Id.

### III. Available Relief

The holding in Gravatt makes clear that Johnson was convicted of a "covered offense" under Section 404(a) of the First Step Act and is eligible for First Step Act relief. The court must now consider what relief, if any, should be granted.

### A. Correction of Guidelines Error

Most courts have determined that defendants are not entitled to plenary resentencings under the First Step Act. United States v. Jones, 409 F.Supp.3d 549, 556 (W.D. Va. 2019). Nevertheless, the Fourth Circuit recently held that courts are not limited to making only statutory Fair Sentencing Act adjustments but also may correct guidelines errors when modifying a sentence under the First Step Act. United States v. Chambers, 956 F.3d 667, 672 (4th Cir. 2020) (disagreeing with United States v. Hegwood, 934 F.3d 414, 418 (5th Cir. 2019)). In Chambers, a petitioner who was deemed eligible for relief under the First Step Act also sought to have his guidelines sentencing range adjusted based on an intervening change in law as set forth in United States v. Simmons, 649 F.3d 237, 243 (4th Cir. 2011). Chambers, 956 F.3d at 669. Simmons was found to apply retroactively on collateral review, Miller v. United States, 735 F.3d 141, 146-147 (4th Cir. 2013), and the government agreed that Chambers would not have qualified as a career offender had he been sentenced after Simmons. Chambers, 956 F.3d at 669. The district court recognized that Chambers was eligible for a reduction in his custodial sentence but declined to impose a reduced sentence because it believed that the First Step Act did not allow for such a plenary resentencing. Id. at 3. The district court also found that the First Step Act did not contemplate that a court would apply all other legal authority that would impact the sentence if he were sentenced today. Id.

The Fourth Circuit reversed. Starting "from a baseline rule of sentence finality," the court examined exceptions to the rule that sentences may not be modified once imposed and found that First Step Act motions fall under 18 U.S.C. § 3582(c)(1)(B), "a distinct exception

9

to finality." Id. "[T]he § 3582(c)(1)(B) exception authorizes courts to 'modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'" Id. Applying § 3582(c)(1)(B), the court next looked to § 404(b) of the First Step Act to determine what it expressly permits. Id.

The court found that § 404(b) permits a court to "impose a reduced sentence," and that when a court "imposes" a sentence, it does not simply adjust the statutory minimum, but also must recalculate the guidelines range. Id. at 4 (citing Gall v. United States, 552 U.S. 38, 49 (2007)). The court rejected the decision in Hegwood where the Fifth Circuit Court of Appeals declined to apply intervening Fifth Circuit law to remove a career offender designation deemed erroneous by intervening precedent. Id. (citing Hegwood, 934 F.3d at 415-416). The court found that unlike the intervening circuit precedent in Hegwood,[3] the Fourth Circuit change brought about by Simmons had been declared retroactive. Id. at 5. In addition, the Hegwood court compared § 404(b) of the First Step Act to 18 U.S.C. § 3582(c)(2), the stricter mechanism by which prisoners modify sentences under guidelines amendments, rather than § 3582(c)(1)(B). Id. The Chambers court concluded that in imposing a modified sentence under the First Step Act, a court is not required to perpetuate a guidelines calculation error that was an error even at the time of sentencing. "Retroactive Guidelines errors based on intervening case law are no different from a typo, and they do not require a plenary hearing to correct." Id. at 6.

---

[3] United States v. Tanksley, 848 F.3d 347, 352 (5th Cir.), opinion supplemented, 854 F.3d 284 (5th Cir. 2017).

Based on the holding in Chambers, Johnson argues that although he is still a career offender for purposes of Count Eight, he cannot be considered a career offender for purposes of Count One, the conspiracy conviction, because following the decision in United States v. Norman, 935 F.3d 232 (4th Cir. 2019), conspiracy is no longer considered a "controlled substance offense" under the career offender guideline. In Norman, the Fourth Circuit applied the "categorical approach" to find that a drug trafficking conspiracy conviction under 21 U.S.C. § 846 is a categorical mismatch to the generic crime of conspiracy enumerated in § 4B1.2(b). Id. at 239. The court concluded that it is error to consider a conviction for conspiracy to possess with intent to distribute drugs a "controlled substance offense" under the Guidelines. Id. at 237.

Johnson contends that because he was convicted of conspiracy to distribute drugs in Count One, the statutory mandatory life sentence that attaches to Count One cannot be used to determine his offense level under the career offender guideline, U.S.S.G. § 4B1.1. Instead, he argues that the 40-year maximum sentence that attaches to his conviction in Count Eight should be used for purposes of § 4B1.1. Using the 40-year maximum sentence would lower his total base offense level to 31, and in turn would lower his guidelines range to 188-235 months. U.S.S.G. § 4B1.1(b)(2); U.S.S.G. Ch. 5 Pt. A.

The government responds that Johnson is not entitled to relief under Chambers and Norman, because Norman has not been deemed retroactive. The government argues that Johnson remains a career offender under Count One with a statutory maximum sentence of

11

life, and his offense level under U.S.S.G. § 4B1.1 remains 34 after the applicable adjustments, such that his guidelines range remains 262-327 months.

The court agrees that even though it appears that if Johnson were sentenced today he would not be found to be a career offender under Norman, at the time he was sentenced his classification as a career offender was consistent with the law. Nor is there any indication that Norman has been made retroactively applicable on collateral review. Therefore, although the court finds that Johnson is eligible for a sentence reduction under the First Step Act, it will not modify his status as a career offender under Count One, and his guidelines range remains 262-327 months.

### B. 18 U.S.C. § 3553(a) Factors

The court next looks at the factors set out in 18 U.S.C. § 3553(a) and Johnson's post-sentencing conduct:[4]

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[4] Section 3582(c)(1) directs the court to consider the factors set forth in 18 U.S.C. § 3553(a); Chambers, 956 F.3d at 674.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

18 U.S.C.A. § 3553 (West).

Turning first to the nature and circumstances of the offense, the court notes that if Johnson were sentenced on Count One today, he would not be subject to the career offender enhancement because he was convicted of conspiracy to distribute cocaine and conspiracy is not a controlled substance offense for purposes of U.S.S.G. § 4B1.1. Norman, 935 F.3d at 239. The government acknowledges that the court can consider the effect that Norman would have on Johnson's guidelines range if he were sentenced today, and that if he were not determined to be a career offender under Count One, he would still be a career offender under Count Eight, with a 40-year maximum sentence, resulting in a total offense level of 31 and a guidelines range of 188-235 months. Nevertheless, the government argues that the court should impose a sentence within the original guidelines sentence of 262-237 months, asserting that a variance below the guidelines range should not be granted to ensure parity with defendants who were sentenced after the Fair Sentencing Act and were not eligible for

13

consideration of sentences below the guidelines range at the implementation of the reduction granted by Amendment 782 to the guidelines.

The government appears to be arguing that the court should ignore the language of the First Step Act regarding who is eligible for a sentence reduction as well as the factors set forth in § 3553(a), because not all defendants are entitled to relief under the First Step Act. While the court is aware of the need for consistent sentences among defendants, it is not free to ignore the law as it is evolving under the First Step Act. Accordingly, the court will not refrain from modifying Johnson's sentence under the First Step Act because other defendants may have been sentenced differently.

Looking next at the history and characteristics of the defendant, the PSR notes that when Johnson was a child, his father was addicted to heroin and abused the entire family both physically and verbally. Johnson's mother left his father and raised her three children in the inner-city housing projects of Roanoke, Virginia, which were well-known for having a high incidence of drug distribution and violence. ECF No. 257 at ¶ 82.

Johnson first used marijuana at the age of 13 or 14 and first used cocaine base and powder cocaine at the age of 17. After release from the federal Bureau of Prisons in approximately 1996, he began using powder cocaine daily, as well as marijuana and alcohol. Following revocation of his supervised release and subsequent re-release, he reported that he had stopped using powder cocaine but still used marijuana and alcohol. Id. at ¶ 87.

The above information was in the PSR and it is presumed that the trial court considered it at Johnson's sentencing. However, since being incarcerated, Johnson has earned not only

14

his GED, but also an associate degree in business from Glenville State College. In addition, he has taken numerous courses offered by the Bureau of Prisons and received a number of certifications. Johnson has not had a disciplinary infraction in the last 13 years of incarceration. ECF No. 256-1. In addition, Johnson has a plan for release which includes reuniting with his father (who has maintained his sobriety for many years), sister, children, and the mother of his children. Johnson currently is 48 years old. The court finds that Johnson's exemplary disciplinary record, his academic achievement, and his current age weigh in favor of a modification of his sentence.

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, the court is mindful that when Johnson was sentenced in 2005, the district court recited his long list of offenses, starting with assault and battery charges when he was 12 years old, and culminating in the serious drug offenses for which he was convicted in 2005. The court noted that Johnson had a substantially different record than a lot of other defendants that went before the court. Sent. Hr'g. Tr., ECF No. 196 at 45, 48. Although the government recommended a sentence of 262 months, the court sentenced Johnson to 300 months, presumably based on the belief that a very long sentence was necessary to effectuate the goals set out in § 3553(a)(2).

Nevertheless, fifteen years have passed since Johnson was convicted and sentenced and for the last thirteen years, he has had no disciplinary infractions. He has taken advantage of the educational opportunities offered by the Bureau of Prisons and has gained knowledge

15

and experience that put him in a better position to earn an honest living than he was in prior to 2005. The court finds that his ability to stay out of trouble and his efforts to improve himself indicate that he has learned to respect the rules of the institution and that he does not present the same threat to the public that he did prior to his incarceration. Johnson's behavior and achievements over the last fifteen years weigh in favor of a sentence modification.

Finally, looking at the kinds of sentences and the sentencing range established for Johnson's offenses, under the First Step Act, Johnson's statutory sentencing range based on 50 grams of cocaine base in Count One is 5 to 40 years. The First Step Act did not change the statutory sentencing range on the 5 kilograms of powder cocaine, which remains 10 years to life. 21 U.S.C. § (b)(1)(A) (2004). The remaining counts remain unchanged as well, with a 20-year maximum term on Count Seven and a 5-to-40-year term on Count Eight. Also, neither Johnson's status as a career offender nor his guidelines sentencing range of 262-327 months based on the 5 to 15 kilograms of powder cocaine in Count One have changed.

The court notes that Johnson was sentenced to 300 months each on Counts One and Eight, based on the amount of powder cocaine he trafficked. Gravatt did not offer guidance about what to do with regard to modifying sentences on counts other than those involving cocaine base, but the court finds guidance in Dean v. United States, 137 S.Ct. 1170 (2017). In Dean, the Court noted that "[s]entencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence." Id. at 1175 (citing Pepper v. United States, 562 U.S. 476, 487-489 (2011)). In addition, § 3553(a) factors "are used to set both the length of separate prison terms and an aggregate prison term comprising

16

separate sentences for multiple counts of conviction." Id. A court imposing a sentence on one count of conviction may consider sentences imposed on other counts. Id. at 1176.

In accordance with Dean, and in keeping with the 3553(a) factors, the court finds that it can modify Johnson's aggregate sentence below the 300 months he received based on the powder cocaine convictions. The government appears to agree with this assessment as it indicated that it was not opposed to a modified sentence for Johnson at the low end of the 262-327-month range. See also United States v. Ellerby, Crim. No. CCB-07-064, 2020 WL 2395619, *4 (D. Md. 2020) (finding defendant who was eligible for relief under the First Step Act was entitled to a reduced sentence on all counts of conviction).

## **CONCLUSION**

Considering the § 3553(a) factors set forth above, the court finds that although Johnson's current guidelines sentencing range remains 262-327 months, a sentence below the guidelines range is warranted. Accordingly, the court modifies Johnson's sentence to 215 months on each count, but not less than time served, with the sentences to run concurrently. Johnson's original sentence of 300 months was 91 percent of the high end of the guidelines sentence of 327 months. A sentence of 215 months is approximately 91 percent of the high end of the 188-235-month guidelines range that would apply if he were sentenced today. The court finds that a sentence of 215 months, but not less than time served, is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a). Accordingly, the court **DENIES** the government's motion to dismiss, ECF No. 267, and **GRANTS** Johnson's motions under the First Step Act, ECF

Nos. 256, 261, and 270. Johnson's sentence is reduced to 215 months, but not less than time served, to be followed by a 5-year term of supervised release. All other pending motions are **DENIED** as moot.

An appropriate Order and amended judgment will be entered.

It is so **ORDERED**.

Entered: May 19, 2020

Michael F. Urbanski
Chief United States District Judge