Case 7:04-cr-00128-MFU   Document 288   Filed 10/02/23   Page 1 of 7   Pageid#: 1191   CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 2 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:04-CR-000128-1 |
| v. | ) |
| | ) |
| WENDELL ANTONIO JOHNSON, | ) |
| | ) By: Michael F. Urbanski |
| Defendant | ) Chief United States District Judge |

### MEMORANDUM OPINION

Defendant Johnson, proceeding pro se, has filed a second motion for early termination

of his five-year period of supervised release. ECF No. 284. The court sought the opinion of

Johnson's United States Probation Officer, who advised that although Mr. Johnson has done

well on supervision, it was not believed that early termination was appropriate for Johnson. In

addition, the United States is opposed to early termination for Johnson. ECF No. 287. Having

reviewed the motion and response, the court **DENIES without prejudice** Johnson's motion

for early termination of supervised release.

On February 3, 2005, a superseding indictment was filed against Johnson charging him

with nine counts of drug trafficking. ECF No. 58. On April 22, 2005, Johnson entered into a

plea agreement where he pled guilty to three of the counts: conspiracy to distribute 50 grams

or more of cocaine base and more than 5 kilograms of powder cocaine, in violation of 21

U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One); possession with intent to distribute a

measurable quantity of powder cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)

(Count Seven); and aiding and abetting possession with intent to distribute more than 500

grams of powder cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count Eight).

Plea Agreement, ECF No. 111 ¶¶ 2, 3. The government agreed to dismiss the remaining counts against him. Id. ¶ 3. The court sentenced Johnson to 300 months each on Counts One and Eight and a term of 240 months on Count Seven, all to run concurrently, and to 5-year terms of supervised release on each count, also to run concurrently. Jmt., ECF No. 154.

On May 20, 2020, Johnson's sentence was reduced to 251 months, but not less than time served, after he filed a motion for reduction of sentence under Section 404(b) of the First Step Act of 2018. Mem. Op. and Order, ECF Nos. 276, 277. He was released from custody the next day to begin serving his term of supervised release.[1] He has served more than three years of his five-year term of supervision.

Johnson filed his first pro se motion for early termination of supervised release on August 17, 2022, and the court denied it without prejudice on October 4, 2022. ECF Nos. 278, 283. Johnson filed his pending pro se motion for early termination on August 3, 2023. ECF No. 284. Johnson asserts that he has been on supervision for three years and has been fully compliant with the terms of supervision. He has maintained steady employment, including starting his own successful lawn care business, and has had no positive drug screens.[2] The United States Probation Officer who supervises Johnson agrees that Johnson has remained employed, had negative drug screens, and has been pleasant and cooperative. The government opposes Johnson's motion for early termination, citing his serious drug offenses,

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Wendell Antonio Johnson") (last viewed Sept. 13, 2023).
[2] Johnson also attached his income tax returns for the last two years to show that he is transparent about his business income. The court returned the income tax returns to Johnson via U.S. Mail because they were unnecessary to address Johnson's motion. ECF No. 285.

2

his lengthy criminal history, and that fact that he is serving the minimal term of supervised release for his offenses.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a period of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (4) any pertinent policy statement issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among defendants; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment

3

goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors and looking at the nature and circumstances of the offense, according to the Presentence Investigation Report (PSR), Johnson was responsible for distributing large amounts of cocaine and crack cocaine in the Roanoke area. He had narcotics connections in New York, North Carolina, Florida, and Texas and frequently traveled to those states. PSR, ECF No. 257 ¶ 11. A search of his grandmother's home, where Johnson was known to reside, revealed 2.25 kilograms of powder cocaine, approximately 286.81 grams of "crack" cocaine, 8.7 grams of marijuana, a handgun, and $10,410 in United States currency. The drugs were estimated to have a street value of $228,000. Id. ¶ 257. On several occasions in August 2004 Johnson and a woman working for Johnson sold powder and crack cocaine to confidential informants. Id. ¶¶ 13–14. On August 26, 2004, a Roanoke City police officer attempted to stop Johnson and Johnson led the police on a high-speed chase before abandoning the car and fleeing into a wooded area where he was apprehended.

Powder cocaine residue was found on Johnson's person and 7.5 grams of powder cocaine was found close to the road where Johnson had stopped the car. Id. ¶ 15.

In September 2004, Johnson was a passenger in a car that was stopped in Little Rock, Arkansas. Johnson was lying in the back of the car, and when the officer stopped the car, Johnson asked to get out to urinate. As the stop was proceeding, Johnson got back in the car and drove off at a high rate of speed, leaving the driver behind. Johnson stopped at the edge of a swamp and escaped into the swamp. He was not found, but his clothes were found and in his pocket was his Virginia driver's license. Located in the floor of the vehicle was a duffle bag containing men's clothing and 5 kilograms of powder cocaine, estimated to have a street value of $500,000. Id. ¶ 16. Other information obtained by law enforcement indicated that Johnson's drug operation was extensive, and evidence could have supported his being held responsible for more than 31 kilograms of powder cocaine, 8.7 grams of marijuana, and 340 grams of crack cocaine. Id. ¶ 25. The wide-ranging and sophisticated nature of the drug distribution scheme, along with Johnson's possession of a handgun and his escape and attempted escape, weigh heavily against early termination of his supervised release term.

Regarding Johnson's personal history and characteristics, Johnson has a long and troubling criminal history, with multiple terms of incarceration for drug offenses. Id. ¶¶ 46, 48, 53, 59. Johnson was considered a career offender, and even without that designation he had a total of 16 criminal history points which placed him in criminal category VI. Id. at 64–68. On the other hand, while incarcerated, Johnson earned not only his GED, but also an associate's degree in business from Glenville State College. In addition, he took numerous courses offered by the BOP and received several certifications. Johnson had no disciplinary

5

infractions for the last 13 years he was incarcerated. Ex. 1 to Mot. to Reduce Sentence, ECF No. 256-1. In addition, as noted above, Johnson's conduct while on supervised release has been exemplary. Taken as a whole, Johnson's history and characteristics weigh both against and in favor of early termination of supervised release. Although Johnson appears to have turned his life around to become a law-abiding citizen, the court remains concerned by the behavior that led to his 2005 incarceration, including his escape and attempted escape from police custody.

Looking at the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that having Johnson continue on supervised release will best serve these goals. While Johnson did well while incarcerated and has done well on supervision, the structure and support offered by his probation officers have no doubt contributed to his success. Johnson's current probation officer advised that he sees Johnson only once every 60 days for a drug test, indicating that the supervision is not overly burdensome, but still provides Johnson with a measure of accountability. Having Johnson continue to report to his probation officer will provide him with additional support as he continues to transition to life outside of prison.

In considering the kinds of sentence and the sentencing range established for Johnson's offense, on Counts One and Eight the minimum term of supervised release is five years, and the maximum is life. See PSR, ECF No. 257 ¶ 100. Because Johnson was ordered to serve the minimum term of supervision under the statute, it is not unreasonable for him to continue

6

serving the term. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

Having considered the § 3553(a) factors, the court **DENIES without prejudice** Johnson's motion for early termination. Continuing Johnson's period of supervised release provides him with an additional period of accountability, protects the community, and increases his chances for long-term success.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: October 2, 2023

Michael F. Urbanski
Chief United States District Judge